# Illinois Official Reports

## Appellate Court

---

**American Federation of State, County & Municipal Employees, Council 31 v. Illinois Labor Relations Board, 2014 IL App (1st) 132455**

---

| | |
|---|---|
| Appellate Court Caption | AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 31, Petitioner, v. ILLINOIS LABOR RELATIONS BOARD, STATE PANEL, THE STATE OF ILLINOIS, and THE TREASURER OF THE STATE OF ILLINOIS, Respondents. |
| District & No. | First District, Second Division<br>Docket No. 1-13-2455 |
| Filed | July 8, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Illinois Labor Relations Board erred in excluding from union membership a person in the position of "Information Systems Analyst II" in the office of the Treasurer of the State of Illinois on the ground that she was a "confidential employee" within the meaning of section 3(c) of the Illinois Public Labor Relations Act, since the employee did not have access to confidential, collective-bargaining information in the regular course of her duties, even if she had access to preliminary budget information, there was no proof that such information qualified as information related to the Treasurer's "collective bargaining policies," and her responsibilities as "Network Administrator" did not give her "authorized access" to information related to the effectuation or review of the Treasurer's collective-bargaining policies. |
| Decision Under Review | Petition for review of order of Illinois Labor Relations Board, State Panel, No. S-UC-12-056. |
| Judgment | Reversed. |

| Counsel on Appeal | Cornfield & Feldman, LLP, of Chicago (Jacob Pomeranz, of counsel), for petitioner. |
| --- | --- |
| | Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Sharon A. Purcell, Assistant Attorney General, of counsel), and Brown, Hay & Stephens, LLP, of Springfield (Lorilea Buerkett, Special Assistant Attorney General, of counsel), for respondents. |
| Panel | JUSTICE LIU delivered the judgment of the court, with opinion. Justice Simon concurred in the judgment and opinion. Presiding Justice Harris dissented, with opinion. |

## OPINION

¶ 1 Petitioner, American Federation of State, County and Municipal Employees, Council 31 (Union), is the union that represented a State of Illinois employee in the position of "Information Systems Analyst II" (ISA II) who was excluded from the collective-bargaining unit when the respondent, Illinois Labor Relations Board (Board), granted a petition filed by the respondent, Treasurer of the State of Illinois (Treasurer), seeking to exclude any incumbent in that position from Union membership because it is a "confidential employee" position within the meaning of section 3(c) of the Illinois Public Labor Relations Act (5 ILCS 315/3(c) (West 2012)) (Act). The issue before this court is whether the Board erred in finding that the ISA II position qualifies as a "confidential employee" position under the Act. For the reasons explained below, we conclude that the Board's decision was clearly erroneous and accordingly reverse.

¶ 2 **I. JURISDICTION**

¶ 3 This is a direct appeal by the Union to the appellate court from the Board's final decision. Jurisdiction is conferred on this court pursuant to section 9(i) of the Act (5 ILCS 315/9(i) (West 2012)), which states that "[a]ny person aggrieved by any such order [of the Board] *** may apply for and obtain judicial review *** except that such review shall be afforded directly in the Appellate Court." Consistent with the Administrative Review Law, "[a]ny direct appeal to the Appellate Court shall be filed within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 5 ILCS 315/9(i) (West 2012); 115 ILCS 5/16(a) (West 2012). The Board's final decision is dated July 13, 2013. The Union's petition for appellate review, filed on August 6, 2013, was timely and complied with this court's procedure for those seeking direct review of administrative orders. Ill. S. Ct. R. 335 (eff. Feb. 1, 1994). Therefore, this court has jurisdiction to hear this appeal.

¶ 4 **II. STANDARD OF REVIEW**

¶ 5 In reviewing an administrative decision, " '[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct' and '[n]o new or additional evidence in support of or in opposition to any finding, order,

- 2 -

determination or decision by the administrative agency shall be heard by the court.' " *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386 (2010) (quoting 735 ILCS 5/3-110 (West 2002)). " '[I]t is not a court's function on administrative review to reweigh evidence or to make an independent determination of the facts.' [Citation.]" *Id.* We review an agency's factual findings to determine if they are against the manifest weight of the evidence. *Id.* at 386-87. The agency's factual findings will not be found to be against the manifest weight of the evidence unless "the opposite conclusion is clearly evident." *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). However, "when the only point in dispute is an agency's conclusion on a point of law," our review is *de novo*. *Provena*, 236 Ill. 2d at 387.

¶ 6        For mixed questions of law and fact, "*i.e.*, where the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard," we review the agency's decision for clear error. *Id*. When reviewing mixed questions of fact and law, this court gives deference to the agency's decision. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001). Reversal of mixed questions of fact and law is inappropriate unless, after review of the entire record, the court has " 'the definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). In other words, a reversal of the Board's final order is not justified merely because an opposite conclusion is reasonable or the appellate court may have ruled differently. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). But "[t]hat the clearly erroneous standard is largely deferential does not mean *** that a reviewing court must blindly defer to the agency's decision." *AFM Messenger Service*, 198 Ill. 2d at 395.

¶ 7        The parties agree that we review the Board's decision that a position qualifies as a "confidential employee" position under the "clearly erroneous" standard. However, we note that there is also authority for applying the "manifest weight of the evidence" standard. See *Niles Township High School District 219 v. Illinois Educational Labor Relations Board*, 387 Ill. App. 3d 58, 69-70 (2008) (*Niles*) (discussing precedent for the "manifest weight of the evidence" standard of review); *Chief Judge of the Circuit Court v. American Federation of State, County & Municipal Employees, Council 31*, 153 Ill. 2d 508, 523 (1992) (*Chief Judge II*) (applying "manifest weight of the evidence" standard for reviewing the Board's determination that employee was not a "confidential employee"). Here, because the parties are in agreement, we will review the Board's decision under the "clearly erroneous" standard.

¶ 8                                    III. BACKGROUND

¶ 9        On April 26, 2012, the Treasurer filed a unit clarification petition with the Board stating that the ISA II position should be properly classified as a "confidential employee" position as defined under the Act and that any incumbent in that position should be excluded from participation in the existing Union.[1] On May 17, 2012, the Union filed its objections to the

---

[1]The petition also sought to designate any incumbent in the position of "Information System Analyst I" as a "confidential employee" excluded from Union participation. However, at the commencement of the administrative hearing on November 9, 2012, counsel for the Treasurer orally withdrew that portion of the petition, stating the position was "unfilled and will likely remain that way."

petition arguing that it was procedurally defective and that an ISA II employee does not perform duties of a "confidential employee" as that term is statutorily defined.

¶ 10 Prehearing memos were filed by the parties, and on November 9, 2012, the administrative law judge heard testimony regarding whether the ISA II position was a "confidential employee" position pursuant to the Act.

¶ 11 Deborah Price testified for the Treasurer. Price was the information technology director for the Treasurer's office from 2003-07 and has currently held that position since February 2011. Price supervises 10 information technology employees, including the incumbent in the ISA II position, Sarah Schuering. Price's subordinates provide computer network support, including application and development, to the Treasurer, the chief of staff and his subordinates, general counsel and legal staff, the human resources' director and staff, and the director of accounting and budget personnel, including the Treasurer's chief budgeter.

¶ 12 Price testified that she supervises two employees who function as computer network administrators: (1) Schuering, the incumbent in the ISA II position under review, and (2) Joey Lau, a network administrator in charge of the computer servers who keeps all communication lines "up and running." Price further explained that in 1999, the Treasurer's office inherited the ISA II position and the position's incumbent, Schuering, when the ISA II functions were transferred from the Department of Financial Institutions to the Treasurer's office. Of the 10 job positions in Price's division, the ISA II position is the only one included in the Union. Specifically, Price testified that the co-network administrator position held by Joey Lau is not included in the Union. Schuering and Lau are the only two employees who have "network administrator passwords," and they perform similar duties. According to Price, "basically, if someone has a problem with anything computer related, network related, [Schuering and Lau] *** get called to help troubleshoot any of those problems." Both employees assist staff with Excel functions, which is a program "used in the budget processing *** in the financial area" of the Treasurer's office." Price testified that she has not been given a network password because she is not qualified for network administration and "rel[ies] on [Schuering's and Lau's] expertise and knowledge and advice to keep [the] network running."

¶ 13 During her testimony, Price also discussed the "Position Description" for the ISA II position, which was entered into evidence. According to the "position summary" in the description, the employee in the ISA II position "performs daily administration, monitoring, and troubleshooting of servers in the LAN environment. These servers include File, Print, Exchange, SQL and Blackberry."

¶ 14 In addition, the specific "Duties and Responsibilities" for the ISA II position are: (1) "[r]esponsible for setting up and administering users"; (2) "[r]esponsible for suspending and archiving users as required due to termination"; (3) "[r]esponsible for setting up and administering shared data access file directories with proper rights and configuration"; (4) "[r]esponsible for setting up and administering SQL Server databases"; (5) "[r]esponsible for configuring and monitoring automated backup procedures for File, SQL and Exchange Servers"; (6) "[r]esponsible for monitoring overall performance of servers and implementing changes based on analysis"; (7) "[s]erves as user support leader–this position is expected to provide expertise and guidance on user support issues, as well as resolving issues independently"; (8) "[p]rovides technical support for third party software systems such as

- 4 -

Unclaimed Property Wagers and Liberty Net Systems"; and (9) "[p]erforms other duties as assigned or required which are reasonably related to the duties enumerated above."

¶ 15 According to Price, as part of Schuering's daily responsibilities, she reviews (1) the server logs to make sure everything is running properly; (2) the email spam folder to confirm whether nonspam email was incorrectly filtered; and (3) the Internet logs to ensure there is proper connectivity. Although Schuering has access to employee email and, theoretically, could read an employee's email without the employee's knowledge, Price explained that Schuering only has permission to read an individual's emails "if they were misdirected into the spam folder." Schuering also can see when a user has been on the Internet and generate reports of Internet usage when requested. Price testified that she had never asked Schuering to tell her "the content of what [an employee] had read" over the Internet "during a given period of time."

¶ 16 Dan Gray, the deputy chief of staff for the Treasurer's office, also testified for the Treasurer. Gray testified that his duties and responsibilities include "the daily management and long-term strategic goals of *** four to seven divisions of the Treasurer's Office[, which] encompasses *** about $13 million of the budget and about 80 employees." He also sits on the Treasurer's committee that is responsible for collective bargaining with the employees' Union, which includes the development of the strategies and proposals from a budget perspective. To carry out his duties, Gray testified that "[i]t's a collaborative effort" that involves interfacing with the Treasurer, the chief of staff, general counsel and other legal staff, the director of human resources, the director of accounting, and the chief budgeter. In formulating policy, including union bargaining strategies containing budget information, Gray creates documents that are stored on the computer network and, as necessary, shared with others in the collaborative group via the network as "it's just the most efficient way for us to converse." Gray then creates a "white paper for the Treasurer, which is a one-page recommendation with all appropriate variables for use during Union negotiations." Gray plays a role in disciplining employees who are Union members and exchanges communications via the computer with management. According to Gray, Schuering had been "called upon to give *** reports about Internet usage" concerning both an employee's "time on the Internet" and the "substance involved."

¶ 17 Following Gray's testimony, the Treasurer concluded his case-in-chief. The Union moved for a directed verdict, arguing that the Treasurer failed to prove that Schuering had authorized access to confidential documents because there was "no evidence that she [had] ever been directed" to view, or ever had viewed, documents related to collective bargaining. The ALJ denied the Union's motion.

¶ 18 Schuering, the incumbent in the ISA II position, then testified for the Union. According to Schuering, she transferred from the Department of Financial Institutions to the Treasurer's office as a Union member in 1999. In the 13 years she has worked in the Treasurer's office, she stated, she has never seen any documents related to collective bargaining. She also explained that she did not recall ever "be[ing] directed by any of the managers to look at a document that they [had] created." Rather, according to Schuering, "most of [her] time" is spent "reviewing server logs in the morning and working with the unclaimed property division, answering help desk calls, setting up access, [and] removing access."

¶ 19 With respect to the Internet usage reports she can access, Schuering testified that those reports do not tell her "the content of any document" that was viewed by other employees or

"the contents of where someone has been on the Web site." The reports, however, will tell her the name of a program that is running. For example, at one time she observed that an employee was using the Skype program at work. She also acknowledged that she had determined, with the help of "further information" from Lau, that an employee was printing non-work-related documents.

¶ 20 Schuering further testified that although she has the capability to access any employee's "Private-Drive" (*i.e.*, P-drive), and to take a document out and copy it to her computer to read the document, she has never done this because she would be "disciplined or fired" for engaging in this conduct. Even when she is "logged on to the exchange server" "[a]s an administrator of the network," she testified, she cannot see the contents of individuals' emails, nor does she have access to the mailboxes for the Treasurer's chief of staff or deputy chief of staff.

¶ 21 In rebuttal, Price testified that she "believe[d]" that both Schuering and Lau have "access to all of the e-mails that are on the exchange server." Price has observed Schuering "access other people's e-mails" when "directed by *** their managers," but it was not "part of [Schuering's] job to read *** the content of e-mails" "in other people's mailboxes other than her own or spam or an IT support mailbox."

¶ 22 Both parties filed posthearing briefs. On April 9, 2013, the ALJ issued her corrected recommended decision and order.[2] The ALJ determined that the Treasurer's unit clarification petition was procedurally appropriate and conformed to existing Illinois law. On the merits, the ALJ found that "Schuering is a confidential employee because she has authorized access to collective-bargaining-related material when she troubleshoots on [the] Excel [computer program]." The ALJ observed that Excel documents are "a class of materials which includes documents that contain preliminary budget information not available to the Union or the public, 'access to which would most certainly impact the effectuation *** [of the employer's] bargaining policies. [Citation.]' " The ALJ further found that "the manner in which [Schuering] troubleshoots those documents sometimes requires her to assess and evaluate their contents." This access, the ALJ explained, "is not merely incidental and is instead an inherent part of her duties because [she] must assess and evaluate the substantive contents of documents she troubleshoots so that she may fix problematic formulas." The ALJ also discounted "the fact that Schuering [had] never seen a collective bargaining document during her 13-year tenure at the Treasurer's Office" and concluded, instead, that the "job responsibilities" of the ISA II position entailed "authorized access to such materials in the regular course of her duties."

¶ 23 The ALJ, however, expressly rejected the Treasurer's remaining arguments concerning Schuering's general access to the network as a network administrator and her ability to review the Internet usage logs. Specifically, the ALJ found that Schuering's "capacity to read all documents stored on employees' P Drives" and to "read *** all emails on the servers *** by logging into the system as Network Administrator and granting herself access rights" did not render her a "confidential employee" because she actually was "prohibited" from doing so. The ALJ similarly was not persuaded that Schuering's "need to read email in the spam folder to determine whether the spam filter misdirected legitimate correspondence" made her

---

[2]The ALJ's original recommended decision and order recommending granting the Treasurer's petition was filed one day earlier, on April 8, 2013.

a "confidential employee" because the Treasurer presented "no evidence that emails related to collective bargaining would be, or have ever been, classified as spam." Lastly, the ALJ found that Schuering's access to employee Internet usage logs was insufficient because (1) "an employee is not confidential merely because she helps enforce the employer's internet policy by reviewing data on servers which contains information that may reveal an employee has violated the employer's internet policy"; and (2) access to the log of the Internet sites that employees have visited "does not lend insight into the manner in which" the employees will use the publicly available information they have viewed.

¶ 24    The ALJ recommended to the Board that the Treasurer's unit clarification petition be granted and that the position of ISA II be designated as a "confidential employee" position due to Schuering's authorized access to collective-bargaining-related documents and information during the course of her regular duties when troubleshooting problems within the Excel computer program for other employees.

¶ 25    On May 13, 2013, the Union filed its exceptions to the ALJ's corrected recommended decision and order, arguing that the ALJ incorrectly concluded that Schuering is a confidential employee based on her troubleshooting of Excel documents because there was no evidence that Schuering had ever worked on an Excel document that contained collective-bargaining-related materials. On June 5, 2013, the Treasurer filed his response to the Union's exceptions as well as his own exceptions to the recommended decision, stating that the ALJ should have additionally found "confidential employee" status for the ISA II position because of the incumbent's (1) access and capacity to read all documents that employees store on their P-drive; (2) ability to log into the computer network as the network administrator with her password and read all emails; (3) ability to read all emails directed, rightly or wrongly, to the spam folder; and (4) ability to access all employees' Internet logs, including those of deputy chief of staff Gray, who testified he uses the Internet to develop collective-bargaining strategies and proposals. On June 21, 2013, the Union filed its response to the Treasurer's exceptions.

¶ 26    On July 19, 2013, the Board issued its final decision and order, which affirmed the ALJ's recommended decision that the Treasurer's unit clarification petition was procedurally proper. The Board also adopted the ALJ's recommended decision that the ISA II position should be appropriately classified as a "confidential employee" position as that term is defined by the Act "based on [Schuering's] duty to troubleshoot Excel documents, including budgetary documents upon which bargaining proposals or responses may be based." The Board found a nexus between those Excel documents containing budget information and the Treasurer's development of collective-bargaining proposals by concluding that such proposals are not developed without referencing any such budget information. The Board also acknowledged Schuering's testimony that she has never accessed and worked on Excel documents containing collective-bargaining-related data, but found that doing so would be a part of her regular, assigned duties and would not be an *ad hoc* assignment. The Board refused to address the Treasurer's exceptions to the ALJ's recommendations because there was already an existing basis on which to find that Schuering is a "confidential employee." The Board entered a final order granting the Treasurer's unit clarification petition.

¶ 27    On July 23, 2013, the Board issued a certification of unit clarification for the position which had the effect of excluding an incumbent in the position of ISA II from the existing Union.

## IV. ANALYSIS

The Board affirmed the ALJ's finding that the incumbent holding the position of ISA II is a "confidential employee" within the meaning of section 3(c) of the Act and is, therefore, excluded from collectively bargaining with the Treasurer. 5 ILCS 315/3(c) (West 2012). This court reviews the final decision of the Board, not the ALJ's recommendation. *Wilson v. Department of Professional Regulation*, 317 Ill. App. 3d 57, 64-65 (2000).

Section 3(c) of the Act defines a "confidential employee" as follows:

"[A]n employee who, in the regular course of his or her duties, assists and acts in a confidential capacity to persons who formulate, determine, and effectuate management policies with regard to labor relations or who, in the regular course of his or her duties, has authorized access to information relating to the effectuation or review of the employer's collective bargaining policies." 5 ILCS 315/3(c) (West 2012).

As the employer, the Treasurer bears the burden of proving that the ISA II position merits classification as a "confidential employee" position. *County of Cook (Provident Hospital) v. Illinois Labor Relations Board*, 369 Ill. App. 3d 112, 123 (2006). We construe the "confidential employee" exclusion "narrowly" because such employees are precluded from exercising collective-bargaining rights that are given to all public employees. *Niles*, 387 Ill. App. 3d at 68 (quoting *Board of Education of Glenview Community Consolidated School District No. 34 v. Illinois Educational Labor Relations Board*, 374 Ill. App. 3d 892, 898-99 (2007) (*Glenview*), and applying analogous provision in Illinois Educational Labor Relations Act).

The Act's purpose in excluding "confidential employees" from any bargaining unit is to prevent employees from having their loyalties divided between their employer, who expects confidentiality in labor relations matters, and the union, which may seek disclosure of management's labor relations material to gain an advantage in the bargaining process. *Chief Judge II*, 153 Ill. 2d at 523.

There are two tests specifically designated in the statutory definition to determine whether a position is, in fact, a "confidential employee" position: the "labor-nexus" test[3] and the "authorized access" test. *Id.* at 523-24.[4] Here, the Treasurer argues that the "authorized access" test applies.

---

[3]Under the labor-nexus test, not at issue here, an employee is "confidential" if he or she "assists in a confidential capacity in the regular course of his or her duties a person or persons who formulate, determine or effectuate labor relations policies." *Chief Judge II*, 153 Ill. 2d at 523.

[4]A third, non-statutory test has developed in the case law and has been applied to factual scenarios where there is no prior history of a collective-bargaining relationship between the incumbent in the position and any union. It is referred to as the "reasonable expectation" test where consideration is given to the future role of the employee and employer in any collective-bargaining activities. *Chief Judge of the Circuit Court v. American Federation of State, County, & Municipal Employees, Council 31*, 218 Ill. App. 3d 682, 700 (1991). The instant case, which concerns an employee who has been a long-term member of the Union, does not involve this third test.

¶ 34    Under the "authorized access" test, an employee is "confidential" if he or she has "authorized access to information concerning matters specifically related to the collective-bargaining process between labor and management." *Chief Judge II*, 153 Ill. 2d at 523. "Labor relations encompass[es] ongoing or future collective bargaining negotiations and strategy, not general, though undoubtedly otherwise confidential department administration matters." *Chief Judge of the Circuit Court v. American Federation of State, County, & Municipal Employees, Council 31*, 218 Ill. App. 3d 682, 699 (1991) (*Chief Judge I*), *aff'd*, 153 Ill. 2d 508. In other words, "[m]ere access to 'confidential' information concerning the general workings of the department or to personnel or statistical information upon which an employer's labor relations policy is based is insufficient to confer confidential status." *Id.* at 699; see also *Board of Education of Community Consolidated School District No. 230 v. Illinois Educational Labor Relations Board*, 165 Ill. App. 3d 41, 60 (1987) ("[A]ccess to information concerning general confidential district business matters is irrelevant. *** [I]nquiry is limited to whether the employee in question has unfettered access ahead of time to information pertinent to the review or effectuation of pending collective-bargaining policies.").

¶ 35    Thus, if, as part of a position's regular duties, an incumbent in the position has access to information that, if divulged to the incumbent's respective bargaining unit, would give the Union unfair, advanced notice of the employer's private information regarding labor relations' activity, the incumbent should be classified as a confidential employee. *Chief Judge I*, 218 Ill. App. 3d at 699. Sporadic access to such information is adequate if that access is "part of [the employee's] normal duties." *Niles*, 387 Ill. App. 3d at 70-71 (citing *Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board*, 143 Ill. App. 3d 898, 911 (1986), and applying analogous provision in Illinois Educational Labor Relations Act). But "sporadic means sometimes, not never." *Id.* at 76.

¶ 36    As an initial matter, we do not address whether the Board erred in finding the Treasurer's Unit Clarification Petition was procedurally proper because the Union has waived that argument by not raising the issue on appeal. Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) ("Points not argued [in the opening brief] are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 37    Turning to the merits, the Union argues that the Treasurer failed to meet his burden of proof because the evidence demonstrated that Schuering was not directed to access confidential, collective-bargaining information and had not accessed such information in 13 years. Further, the Union maintains that the Board erred in speculating that Schuering's Excel troubleshooting duties could give her authorized access to confidential information because such access would be "ancillary and incidental" to her job duties. In response, the Treasurer and the Board contend that, regardless of whether Schuering has actually seen a collective-bargaining document in connection with her Excel troubleshooting responsibilities, her regularly assigned job duties require her to see and review the contents of Excel spreadsheets, which could include budget information. In the alternative, should this court agree with the Union, the Treasurer maintains that we nevertheless can conclude that Schuering is a "confidential employee" based on her general access to documents and email in her role as a "Network Administrator"–an issue the Board declined to address. For the reasons explained below, the Board's decision was clearly erroneous because neither

Schuering's Excel troubleshooting responsibilities nor her access as a Network Administrator renders her a "confidential employee" under the Act.

¶ 38        A. The Treasurer Failed to Prove That Schuering's Excel Troubleshooting Duties
                    Qualified Her as a "Confidential Employee"

¶ 39    According to the Union, the Treasurer did not meet his burden of proof because he failed to provide sufficient evidence that Schuering's Excel troubleshooting responsibilities gave her authorized access to confidential, collective-bargaining information in the regular course of her duties as the evidence was undisputed that she had never seen or been asked to review collective-bargaining documents. In response, the Treasurer and the Board maintain that whether Schuering has actually viewed collective-bargaining information is immaterial; instead, they argue that she has the requisite authorized access because she could view such documents as part of her job duties and those documents could include preliminary budgeting information used in collective bargaining. Because we find that the Board misapplied the relevant legal standard in assessing whether Schuering was a "confidential employee," we agree with the Union.

¶ 40        1. Schuering Does Not Have Authorized Access in
                    the Regular Course of Her Job Duties

¶ 41    First, the Board erred in concluding that the undisputed facts surrounding Schuering's Excel troubleshooting responsibilities satisfy the established legal criteria for the "authorized access" test. Although the evidence demonstrates that Schuering would have authorized access to certain Excel documents if asked by an employee to assist them in troubleshooting, access to Excel documents alone is insufficient–the authorized access must be to "information relating to the effectuation or review of the employer's collective bargaining policies." Here, the Board clearly erred in elevating evidence of Schuering's theoretical access to such information–access that is only tangential and incidental to her regular job duties–over the undisputed evidence that she had yet to be exposed to collective-bargaining information at any time during her 13-year tenure in the ISA II position, the latter of which should "weigh heavily" in the Board's analysis. *Niles*, 387 Ill. App. 3d at 76.

¶ 42    In situations where, as here, "a position has existed for a substantial amount of time, the Board will weigh heavily the employee's actual access to collective bargaining material." *Niles*, 387 Ill. App. 3d at 76; see also *Glenview*, 374 Ill. App. 3d at 903-04 (holding that evidence that "technology administrative assistant theoretically *could* have access to confidential collective-bargaining information" was insufficient where the employer "presented no evidence" that the employee "had *actual* authorized, unfettered access to such confidential information in the course of her regular duties" (emphases in original)). Moreover, although employers need not "establish that [the employee] has actually seen such information," they at least must demonstrate that "real and more than incidental access will occur in the regular course of her duties." (Internal quotation marks omitted.) *Glenview*, 374 Ill. App. 3d at 902.

¶ 43    Our decision in *Niles*, an Illinois Educational Labor Relations Act case, is instructive on this point. There, the challenged positions were the world-wide web communications assistant and the systems and networking engineer. These employees testified that they had

- 10 -

not "read or retrieved collective bargaining information in five years' time." *Niles*, 387 Ill. App. 3d at 76. Relying on this testimony, this court explained that "[i]f a computer person testifies that she has not read collective bargaining documents, then any access would be the result of mere chance" and "[s]uch theoretical access [was] insufficient" to satisfy the "authorized access" test. *Id.* Moreover, because the employees had not accessed collective-bargaining information in five years, "[a]ccess was certainly not part of [the employees'] regular duties." *Id.*

¶ 44    Similarly here, it is undisputed that Schuering has not reviewed a collective-bargaining document at any time during her 13-year tenure in the ISA II position at the Treasurer's office. Nor is there any evidence that Gray–the only witness who presumably had any involvement with the Treasurer's collective-bargaining negotiations–has ever directed Schuering to review documents containing collective-bargaining information. The Board, however, departed from this court's analysis in *Niles* and failed to "heavily weigh" this evidence of Schuering's actual access to collective-bargaining information. Rather, it focused on the possibility that Schuering *could* access such confidential information in the future as part of her troubleshooting responsibilities. But, as the evidence demonstrates, her theoretical access to collective-bargaining information–access which had yet to occur after 13 years in the same position–would only be "incidental" to her job responsibilities and would not occur in the regular course of her job. (Internal quotation marks omitted.) See *Glenview*, 374 Ill. App. 3d at 902. Such access, therefore, is unlikely to "prematurely expose[ ]" the Treasurer's "negotiation strategies in collective bargaining" "to the employees with whom it will bargain." *Chief Judge I*, 218 Ill. App. 3d at 698-99. On this record, the Board's finding that Schuering's Excel troubleshooting responsibilities rendered her a "confidential employee" under the Act is inapposite to the analyses in *Niles* and *Glenview* and demonstrates a misapplication of the law.

¶ 45    *Department of Central Management Services/The Department of State Police v. Illinois Labor Relations Board, State Panel*, 2012 IL App (4th) 110356, cited by the Treasurer and the Board, is distinguishable and does not undermine the general proposition that the Board should "heavily weigh" an employee's actual access to the collective-bargaining information where the position "has existed for a substantial amount of time." There, the job description for the challenged attorney position included assignments to labor relations matters and providing legal advice to labor relations divisions. The board concluded that, despite the job description, the attorney was not a "confidential employee" because he had yet to perform any duties related to labor relations. The appellate court reversed, holding that in applying the "authorized access" test, the attorney's job duties must be considered, not "just *** what the current employee has done so far in the position." *Id*. ¶ 32. The court also emphasized that the attorney worked in the same office as other lawyers who had received "collective-bargaining assignments," finding that it was "highly likely he is present for conversations about those assignments or has computer access to his coworkers' work." *Id.* Thus, unlike the present case where any theoretical access would only be tangential and incidental to Schuering's regular responsibilities, the attorney's job duties in *Central Management Services* expressly included substantive involvement in labor relations matters.

¶ 46    For these reasons, we conclude that the Treasurer failed to prove that Schuering's theoretical, yet unrealized, exposure to collective-bargaining documents as part of her Excel troubleshooting responsibilities qualifies her as a "confidential employee" under the Act.

2. Preliminary Budget Information Is Not Information Relating to the Effectuation
or Review of the Employer's Collective Bargaining Policies

¶ 48        Second, even assuming that Schuering had authorized access to preliminary budget information as part of her Excel troubleshooting duties, the Treasurer also has failed to prove that such information qualifies as "information relating to the effectuation or review of the employer's collective bargaining policies" as required by the Act. In *Chief Judge I*, this court expressly rejected the argument that employees actually involved in preparing budget information were confidential employees, holding that "[m]erely supplying raw financial data for use in negotiations is insufficient to establish that an individual is a confidential employee." *Chief Judge I*, 218 Ill. App. 3d at 709. Specifically, the employees at issue were responsible for "supplying raw financial data," which was later "use[d] *** in future collective bargaining negotiations," and assisting the Director of Financial Control in "furnishing a budget for use in future collective bargaining negotiations." *Id.* at 701. This court distinguished such budgetary information from information related to collective-bargaining proposals and policies, holding that employees' "access to confidential information which *may be used in but is not related to* labor relations does not indicate that they are confidential employees." (Emphasis added.) *Id.* at 702. Similarly here, the Treasurer has not demonstrated that such financial information is anything more than the type of general business information this court has previously held does not satisfy the requirements of the Act.

¶ 49        The Treasurer relies on *Department of Central Management Services v. Illinois Labor Relations Board, State Panel*, 2011 IL App (4th) 090966, to argue that budget information and financial data "relat[es] to the effectuation or review of the employer's collective bargaining policies." To the extent that this case is inconsistent with both our decision in *Chief Judge I* and the well-established rule that the "confidential employee" exclusion is "narrowly" applied, we decline to follow it.

¶ 50        The Board found that "Schuering is a confidential employee based on her duty to troubleshoot Excel documents, including budgetary documents upon which collective-bargaining proposals and responses may be based." Contrary to the Board's finding, however, the evidentiary record in this case does not establish that Schuering has had actual access to collective-bargaining information. Furthermore, the job description for the ISA II position occupied by Schuering does not indicate that she will have, or is intended to have, access to confidential collective-bargaining information, nor does the description indicate that her employer contemplates that she will access such information. Finally, the evidence shows that, on a day-to-day basis in the regular course of her duties, Schuering does not handle documents or records containing confidential collective-bargaining information. As a result, we are " 'left with the definite and firm conviction that a mistake [was] committed' " by the Board's finding that Schuering is a "confidential employee," and we find the Board's determination to be clearly erroneous. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). We therefore reverse the decision of the Board.

¶ 51        The dissent concludes otherwise and finds that the Board's determination that the ISA II position is a "confidential employee" position is not clearly erroneous. In contrast to the

majority's analysis, the dissent maintains that *Niles* and *Glenview* are distinguishable from this case, because the evidence in those cases "showed that *** [the employees'] jobs did not require them to actually read the contents of such [collective-bargaining] documents during troubleshooting and maintenance tasks." *Infra* ¶ 68. We respectfully disagree. To the contrary, in *Niles*, the record contained evidence that one of the contested employees did in fact "read materials" that could conceivably contain confidential or sensitive information, albeit "only when she needed to 'troubleshoot.' " *Niles*, 387 Ill. App. 3d at 63. In *Glenview*, the court noted that "the evidence showed that, at most, the [employee] had been exposed to the names of folders and subfolders and e-mail subject lines that may have suggested the underlying content of the documents related to confidential bargaining information" and, furthermore, that the employee's "job description indicates that the person occupying the position should have the 'ability to handle confidential information.' " (Internal quotation marks omitted.) *Glenview*, 374 Ill. App. 3d at 904. Finally, unlike the situation in *Central Management Services*, 2012 IL App (4th) 110356, ¶¶ 30-31, the prospect that Schuering may be required to access or review collective bargaining information as part of her authorized job responsibilities is mere speculation, when the evidence has established that she has not been privy to this information for the past 13 years during her employment as an ISA II.

¶ 52                    B. The Treasurer's Office Failed to Prove That Schuering's Duties as
                              Network Administrator Gave Her Authorized Access to
                                Information Relating to the Effectuation or Review of
                                   Treasurer's Collective-Bargaining Policies

¶ 53     In the alternative, the Treasurer argues that even if this court disagrees with the Board that Schuering's Excel troubleshooting responsibilities render her a "confidential employee," we nevertheless can affirm the Board's decision because Schuering's "duties as a Network Administrator" gave her authorized access to collective-bargaining-related information. The Board declined to reach this issue. Although the Board maintains that we should remand this issue for it to address in the first instance, both the Union and the Treasurer contend that we can resolve it on appeal.

¶ 54     In *Johnson v. Human Rights Comm'n*, 318 Ill. App. 3d 582 (2000), this court outlined a procedure for determining whether a remand is necessary if we conclude that the agency's decision must be reversed. Specifically, "[w]here the record will permit only one determination," this court "may impose that determination." *Id.* at 587. But, because we lack "authority to 'evaluate the credibility of the witnesses or resolve conflicting evidence' " (*id.* (quoting *Przislicki v. City of Chicago*, 212 Ill. App. 3d 661, 668 (1991))), if we find that "varying credibility evaluations could support differing resolutions of a case, we must remand to the agency for findings of fact" (*id.*).

¶ 55     Here, because the material facts are not in dispute–indeed, the Treasurer refers to this issue as a "conclusion *** of law" and has not challenged any of the ALJ's relevant factual findings–we can address the Treasurer's argument that Schuering's duties as a Network Administrator give her the requisite "authorized access" to qualify as a "confidential employee" under the Act. As explained below, they do not.

¶ 56     The ALJ concluded that Schuering's general responsibilities as a "Network Administrator" did not make her a "confidential employee" because (1) "she is prohibited

- 13 -

from taking the only action which could allow her to read" the "documents stored on employees' P drives"; and (2) she is "prohibited" from "reading *** emails on the servers." Further, although the Board did not base its decision on Schuering's general network access, it did acknowledge her testimony that "while she had the capability of accessing documents, this was not permitted," and concluded that this fact did not "appear *** to be incorrect." The Treasurer notably has not challenged these factual findings that Schuering was prohibited from accessing other employees' documents and emails. Instead, he contends that Schuering's access is nevertheless "authorized" because "the Treasurer *intends for her to have the Network Administrator password*," and employers "should not be left in the position to simply trust an employee not to access" confidential collective-bargaining information. (Emphasis in original.)

¶ 57        This argument, however, improperly conflates Schuering's *capability* to access with *authorized* access–the latter is required by the statute. As this court explained in *Niles*, "the issue is not what access an employee is capable of exercising, but what access the employer intends for the employee to exercise." *Niles*, 387 Ill. App. 3d at 75. In other words, "the issue is not capability but authorization." *Id.*; see also *County of Cook (Provident Hospital) v. Illinois Labor Relations Board*, 369 Ill. App. 3d 112, 125 (2006) (affirming Board decision that employees who reported to the director of human resources and labor relations were not "confidential employees" under the Act–despite having "the means" to access director's collective-bargaining and labor-relations files–because "there was little evidence presented that they were 'authorized' to access that information").

¶ 58        *Support Council of District 39 v. Illinois Educational Labor Relations Board*, 366 Ill. App. 3d 830 (2006) (*Wilmette*), cited by the Treasurer, is not to the contrary. In *Wilmette*, the court affirmed the board's decision that the school district's newly created network manager position was a "confidential employee" position under the analogous provision of the Illinois Educational Labor Relations Act. But unlike the present case, in *Wilmette*, the board found that the manager's access to the school district's network was "without restriction" and "unfettered." (Internal quotation marks omitted.) *Id.* at 832. Here, based on the ALJ's unchallenged findings, Schuering actually was prohibited from using her network administrator access to view other employees' documents or email unless instructed to do so. As such, her access was not "authorized" as required by the Act.

¶ 59                                                V. CONCLUSION

¶ 60        For the foregoing reasons, the Board's final decision that the position of ISA II is a "confidential employee" position within the meaning of section 3(c) of the Illinois Public Labor Relations Act was clearly erroneous. Further, we conclude that the Treasurer's alternative basis for affirming the Board's decision is not supported by the record. Accordingly, the Board's decision is reversed.

¶ 61        Reversed.

¶ 62        PRESIDING JUSTICE HARRIS, dissenting.

¶ 63        I would affirm the Board's determination that the ISA II position qualifies as a "confidential employee" position under the Act. Therefore, I respectfully dissent.

¶ 64 As the majority stated above, this court gives deference to the Board's decision when reviewing mixed questions of fact and law. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001). The Board's determination as to whether the facts establish that an employee is a confidential employee as defined by statute will not be reversed unless that determination was clearly erroneous. *Board of Education of Glenview Community Consolidated School District No. 34 v. Illinois Educational Labor Relations Board*, 374 Ill. App. 3d 892, 899 (2007). The question for an appellate court is not how we would rule if we had been standing in the Board's shoes and writing in the first instance. The "clearly erroneous" standard of review is so firmly established in the common law that courts have on many occasions chosen to define it using various phrases all designed to emphasize that reversals should only be granted to correct profoundly wrong orders. Such phrases as "does the Board's decision stink like a dead fish" (*Niles*, 387 Ill. App. 3d at 69 (citing *Glenview*, 374 Ill. App. 3d at 899)) and the decision must "strike us as wrong with the force of five-week-old, unrefrigerated dead fish" (*Parts & Electric Motors, Inc. v. Sterling Electric, Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)) are such examples. Notwithstanding, the majority now reverses the Board's decision, which is reasonable and worthy of deference, and finds that Schuering's actual access to collective-bargaining information is merely "theoretical access to such information–access that is only tangential *** to her regular job duties." *Supra* ¶ 41. We should not reverse an agency's determination unless it is clearly erroneous, or in other words, we have a "definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *AFM Messenger Service*, 198 Ill. 2d at 395. The agency did not make a mistake. Schuering's access to the collective-bargaining information was not theoretical. It may be tangential to her regular job duties but it is still actual access to the information.

¶ 65 The Act permits employees to organize, but it excludes confidential employees from the collective-bargaining unit. "Confidential employee" is defined as one who "in the regular course of his or her duties has access to information relating to the effectuation or review of the employer's collective bargaining policies." 115 ILCS 5/2(n) (West 2012). Even if Schuering's access to such information was sporadic or "theoretical," she would still be a confidential employee under the Act as long as her access resulted from the performance of her regular duties. *Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board*, 143 Ill. App. 3d 898, 911 (1986).

¶ 66 The ISA II position at issue here is 1 of 10 in the Treasurer's office that provides computer network support to the Treasurer and the staff. None of the other nine positions are included in the Union, and neither should Schuering's. The ISA II position "performs daily administration, monitoring, and troubleshooting of servers" and assists with functions of Excel, which is a program used in the Treasurer's office for budget-related matters. Dan Gray testified that as deputy chief of staff for the Treasurer's office, he is responsible for "the daily management and long-term strategic goals" of the divisions of the office. He also sits on a committee responsible for collective bargaining with the Union, and takes part in the development of strategies and proposals for use during the bargaining process. In this capacity, Gray creates documents formulating bargaining strategies that contain budget information which he stores on the computer network.

¶ 67 The ALJ found that when troubleshooting an Excel document, Schuering must sometimes "assess and evaluate their contents" to "fix problematic formulas" and these documents in the

Treasurer's office can contain budget information pertinent to the collective-bargaining process. The ALJ further found that Schuering had authorized access to such material in the regular course of her duties. The Board added that although to date, Schuering may not have had occasion to view collective-bargaining information in an Excel document, doing so would be part of the regular course of her duties and not an *ad hoc* assignment. The Board's findings of fact are entitled to deference. On administrative review it is not this court's function to reweigh the evidence or make independent determinations of fact. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). The majority has chosen to reweigh the evidence and substitute its judgment for that of the Board. The facts presented sufficiently support the Board's finding that the ISA II is a confidential employee position under the Act, and I do not have a firm and definite conviction that the Board made a mistake.

¶ 68      The majority based its decision on reweighing Schuering's testimony that she has never encountered a collective-bargaining document in her 13 years in the position. Consequently, it determined that Schuering did not have authorized, or actual, access to collective-bargaining information in the regular course of her duties, relying on *Niles Township High School District 219 v. Illinois Educational Labor Relations Board*, 387 Ill. App. 3d 58 (2008), and *Glenview*, 374 Ill. App. 3d 892, for support. Neither of those cases supports the majority's opinion. In both cases, the evidence showed that not only did the employees at issue testify that they had never viewed collective-bargaining material in the course of their duties, but also that their jobs did not require them to actually read the contents of such documents during troubleshooting and maintenance tasks. The court in both *Niles* and *Glenview* found the fact that the employees did not have to read the collective-bargaining information they accessed while performing their regular duties significant when it determined the employees did not have actual access to confidential material. *Niles*, 387 Ill. App. 3d at 76; *Glenview*, 374 Ill. App. 3d at 901-02.

¶ 69      The majority disagrees and points out that in both *Niles* and *Glenview* the contested employees stated that they read or had access to confidential material. However, in *Niles*, although one of the contested employees stated that on occasion she "read materials only when she needed" to troubleshoot, the materials she read consisted of " 'backups' of stored information, which was 'a mixture of everything on the server.' " *Niles*, 387 Ill. App. 3d at 63. Although there were no restrictions on her access to information, she did not have access to all of the servers and stated that she had no reason to read a collective bargaining document. *Id.* at 64. In *Glenview*, although the contested employee's job description stated that the person in the position should have the "ability to handle confidential information," the court did not view the description as determinative because "it does not specify the nature of such confidential information." (Internal quotation marks omitted.) *Glenview*, 374 Ill. App. 3d at 904. The court found that the school district failed to present evidence showing that the employee had actual, authorized access to confidential collective bargaining information in the course of her regular duties. *Id.* at 903-04.

¶ 70      Here, the ALJ found that when troubleshooting an Excel document, Schuering must sometimes "assess and evaluate their contents" to "fix problematic formulas" and that these documents can contain budget information material to the collective-bargaining process. Price testified that Schuering's position provides computer network support to the Treasurer and staff, including assistance with Excel functions. Unlike the situation in *Niles* and

*Glenview*, where no evidence was presented that the contested employees must read or have actual access to confidential collective-bargaining information, here we know with certainty that Schuering had actual access to the information when performing her regular duties. She was required and had the ability to actually read the contents of Excel documents while troubleshooting.

¶ 71          The majority has reweighed heavily Schuering's testimony that in all of her years on the job she has never encountered a collective-bargaining document, reasoning that when a position exists for a substantial length of time the employee's actual access weighs in the determination. Equally relevant to the inquiry is the position's present job description. See *Department of Central Management Services/The Department of State Police v. Illinois Labor Relations Board/State Panel*, 2012 IL App (4th) 110356, ¶¶ 29-30 (hereinafter *CMS*). In *CMS*, the court found that although the employee at issue had not accessed collective-bargaining material so far in the course of his duties, his job description states that one of his duties is drafting and reviewing legal documents including labor agreements. *Id.* The court found the fact that the employee had not yet received an assignment with access to confidential material "carrie[d] little weight" because he could be assigned "such a task at any time." *Id*. ¶ 32. It further reasoned that to look only "at what the current employee has done so far in the position, and not what his or her job responsibilities include, yields absurd results" because if the employee subsequently receives such an assignment he or she "would need to be removed from the union, which could happen at any time." *Id*.

¶ 72          The job description for ISA II states that the position "performs daily administration, monitoring, and troubleshooting of servers" which the ALJ found includes assistance with Excel, a program used in the Treasurer's office for budget-related matters. In order to perform her troubleshooting duties, the ALJ found that Schuering must sometimes "assess and evaluate their contents" to "fix problematic formulas" and these documents in the Treasurer's office can contain budget information pertinent to the collective-bargaining process. As the court in *CMS* reasoned, the fact that Schuering has not yet performed a task requiring her to peruse a collective-bargaining document carries little weight here because she could perform such a task at any time according to her job description.

¶ 73          The majority finds significant the fact that Schuering has not encountered confidential collective-bargaining information in the course of her duties for the past 13 years. However, the evidence presented shows that in her position Schuering must assist in troubleshooting with Excel, and when doing so she must read the contents of Excel documents in order to troubleshoot. Excel documents can contain confidential collective-bargaining information. The majority now changes the law to exclude from "confidential employee" status those who have actual access to read the contents of confidential-bargaining information but have not yet done so. Although Schuering has not come across such documents yet, she could at any time during the course of her duties. The majority opinion sets out a change to the law which is properly one for the legislature, not the courts. For these reasons, I would find that the Board's determination was not clearly erroneous and should be affirmed; therefore, I respectfully dissent.